Eagle Office Equipment Co., Inc. v. Commissioner.
Eagle Office Equip. Co. v. Commissioner
Docket No. 8739.
United States Tax Court
1946 Tax Ct. Memo LEXIS 35; 5 T.C.M. (CCH) 967; T.C.M. (RIA) 46264; November 13, 1946
*35 Ralph M. Andrews, Esq., 238 Main St., Buffalo 2, N. Y., and Robert R. Barrett, Esq., for the petitioner. Clay C. Holmes, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined the following deficiencies in the petitioner's tax for its fiscal year ended May 31, 1942: Income tax
$4,783.50
Declared value excess profits tax
1,742.68
Excess profits tax
8,535.64 The only issue for decision is whether the Commissioner erred in disallowing a part of the deduction claimed for salary and commissions paid to Edward H. Geisendorf, the president and principal salesman of the petitioner. Findings of Fact The petitioner is a New York corporation organized in 1940. Its returns for the period in question were filed with the collector of internal revenue for the 28th district of New York. Edward H. Geisendorf was the president of the petitioner during the taxable year. He has at all times been the principal executive officer of the petitioner and the person chiefly responsible for its successful operation. He has also been its principal salesman since its incorporation. Geisendorf was paid a salary during *36 the taxable year of $7,360 for services actually rendered by him to the petitioner as president. His salary was duly authorized by resolutions of the board of directors. The petitioner also paid him $38,061.33 as commissions on sales made by him during the taxable year. The rates at which the commissions were paid to him were fixed by resolutions of the board of directors and were the same as those provided for the other salesmen of the petitioner, with one exception not material hereto, and were not in excess of the rates at which commissions were paid to salesmen by others engaged in the same line of business as the petitioner. Geisendorf reported on his individual tax returns for the calendar years 1941 and 1942 the entire amount of $45,421.33 which the petitioner paid him during its taxable year ended May 31, 1942, as salary and commissions. The Commissioner, in determining the deficiencies, allowed the petitioner a deduction of $25,000 for compensation paid to Geisendorf, and disallowed the balance of $20,421.33 with the explanation that it was "unreasonable". The petitioner was engaged in the business of selling stationery, office systems, office equipment and supplies, and *37 related merchandise at retail. It also operated a lithographing plant. It used about 25,000 square feet of floor space in conducting its business. It employed about 35 persons during the taxable year. Its net profit for the taxable year, after deducting the salary and commissions paid to Geisendorf, amounted to $35,104.40. Its gross sales for that period were $614,473.82, on which it paid commissions in the total amount of $50,490.02. It declared and paid a dividend during the year in the amount of $4,080 on 68 shares of stock outstanding on December 1, 1941. The following table shows how the stock of the petitioner was held on May 31, 1942: Number
Stockholder
of Shares
Edward H. Geisendorf
3
Grace Chase Geisendorf
47 1/2
George C. Pohnke
6
Charles A. Smith
4
Russell Koen
10
Total outstanding
70 1/2 Grace was the wife of Edward Geisendorf. She had paid $900 from her own funds for shares standing in her name, and the balance of the subscription price of $400 per share had been paid by the transfer to the petitioner of assets owned by Edward. Geisendorf had had many years of experience in the business carried on by the petitioner. He had customers with *38 whom he had dealt for many years and he had also established valuable relations with suppliers of the merchandise which he sold. He was able to make unusually large sales during the taxable year because of his ability to advise customers in the use of the merchandise which he sold and because of the excellent relationships which he had built up over a long period of years with customers and manufacturers. The total amount paid by the petitioner to Geisendorf during the taxable year represented a reasonable allowance for salaries or other compensation for personal services actually rendered by him during that year in carrying on the business of the petitioner. The stipulation of the parties is incorporated herein by this reference. Opinion MURDOCK, Judge: The respondent has disallowed a part of the deduction claimed by the petitioner solely on the ground that it was "unreasonable". He defends his determination on that ground alone. Geisendorf's earnings during the taxable year were about seven times as much as he had ever earned during any prior year. The respondent argues that the petitioner's merchandise practically sold itself during the taxable year because of the seller's *39 market brought on by the war. There is no doubt that the large increase in the petitioner's business during the taxable year was attributable in part to the war. The evidence shows, however, that the merchandise still had to be sold, and the large sales made by Geisendorf were due to his personal efforts. He was able to suggest uses for merchandise and was able to assist customers in using systems and other merchandise which he had for sale. He had gained the confidence of his customers by furnishing them good services over a long period of years, and when they needed more material, as they did during the war, they came to him for advice and assistance which he was able to give. He was also able to secure materials when that was difficult. This was attributable to the fact that he represented customers who had priorities for materials and by the fact that he had established relations with manufacturers of those materials which stood him in good stead. The evidence shows that his commissions were earned by him and were reasonable in amount for the services which he performed. He performed duties as president entirely aside from those performed as a salesman. While the evidence in *40 regard to his salary is not so clear and convincing as is that relating to his commissions, nevertheless, there is evidence to show that he spent long hours at his duties as president and that he had many duties to perform in that capacity. These included all purchasing, the supervision of all sales, handling of most employment and personnel matters, supervision and preparation of bids, supervision of delivery and shipping, and management of the lithographing plant. He spent about 20 per cent of his time on management. The corporation earned a substantial amount on its capital after deducting the salaries and commissions here in question. The amounts paid to Geisendorf were not dividends in disguise. We have concluded, upon consideration of the entire evidence, that the Commissioner erred in disallowing a part of the deduction. Decision will be entered under Rule 50.